IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DONALD REYNOLDS,

      Plaintiff,

v.                                 Case No. 5:20-cv-00753

D.L. YOUNG, et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Donald Reynolds, proceeding *pro se*, seeks injunctive relief and money damages under *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) for alleged violations of his civil rights. This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Currently pending are the following four motions filed by Reynolds, all of which seek preliminary injunctive relief: Motion for Preliminary Injunction, (ECF No. 21); Motion to Order Defendant Ansley to Cease with Retaliation, (ECF No. 42); Motion for Preliminary Injunction, or in the Alternative, Motion to Order Transfer, (ECF No. 49); and Motion to Reverse Retaliatory Actions Via Restraining Order of Court, (ECF No. 57). After thoroughly considering the arguments and supporting materials, the

undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Motion for Preliminary Injunction, (ECF No. 21); **DENY** the Motion to Order Defendant Ansley to Cease with Retaliation, (ECF No. 42); **DENY** the Motion for Preliminary Injunction, or in the Alternative, Motion to Order Transfer, (ECF No. 49); and **DENY** the Motion to Reverse Retaliatory Actions Via Restraining Order of Court, (ECF No. 57).

## I.    <u>Relevant Background Information</u>

This case involves alleged violations of the First and Fourteenth Amendments to the United States Constitution. In 2007, Plaintiff Donald Reynolds ("Reynolds") was convicted of armed bank robbery, discharging a firearm during a crime of violence, and possession of a firearm by a convicted felon. *United States v. Reynolds,* Case No. 1:06-cr-00081 (S.D. Ga. Mar. 7, 2007). He was sentenced to a lengthy prison term. While incarcerated, Reynolds has published multiple manuscripts through his publishing company, Uncaged Minds Publishing ("Uncaged Minds").

In January 2020, Reynolds was transferred to FCI Beckley, where he is currently incarcerated. Reynolds claims that in May 2020, he attempted to mail three completed manuscripts to Uncaged Minds, but the manuscripts were destroyed or withheld by FCI Beckley employees. (ECF No. 12 at 4). Reynolds filed a grievance over the loss of his manuscripts and was assured by the mailroom supervisor that the staff's improper behavior would never happen again. (*Id.*).

Notwithstanding this assurance, Reynolds claims that in October 2020, mailroom staff failed to provide him with several pieces of certified mail. (*Id.* at 5). Reynolds submitted a grievance over the withheld mail, which triggered an onslaught of retaliation by FCI Beckley employees. Reynolds states that shortly after filing the

grievance, he was called to the mailroom, threatened by mailroom staff, called an expletive, and told that if he continued filing grievances, he would not receive his mail. (ECF No. 12 at 5). The next day, Reynolds filed a "sensitive" grievance with the office of the Inspector General, citing the threat of retaliation against him. (*Id.* at 6). However, he did not receive a satisfactory reply.

Reynolds claims that since then, he has had a substantial amount of his mail rejected by mailroom staff, as well as by Special Investigative Services ("SIS") officers, for reasons that are unjustified. (ECF No. 12 at 6). As an example, Reynolds indicates that a manuscript he prepared for mailing was returned to him as "rejected" on November 3, 2020 "per Warden/SIS." (ECF No. 12 at 6). Reynolds contends that he has now been told he will no longer be able to mail out manuscripts.

On November 17, 2020, Reynolds initiated this action, asking the Court to grant him monetary damages and injunctive relief. (ECF No. 2). In the complaint, Reynolds claims that the rejection of his manuscripts for mailing was not done out of any legitimate penological interest, but rather, was in retaliation for his filing of grievances. (*Id.*). Reynolds further alleges that he published novels while incarcerated at FCI Beckley, and it was only after he submitted grievances that the mailroom staff began to reject his manuscripts. (*Id.*). Reynolds claims to have suffered concrete, particularized, actual, and imminent injury to a legally protected interest. He alleges that his rights under the First and Fourteenth Amendment have been violated, and his manuscript's "time-sensitive" nature proves the imminence of his injury, adding that the loss of First Amendment rights for even minimal periods of time constitutes irreparable injury. (*Id.*).

On November 30, 2020, Reynolds filed an amended complaint, adding additional defendants and expounding on his claims. (ECF No. 12). In the amended pleading,

Reynolds alleges that Defendants Sweeny and Manning illegally destroyed three of his manuscripts. (ECF No. 12 at 7). He claims that Defendants Young, Sweeny, and Manning are denying him freedom of expression by prohibiting him from sending his manuscripts to Uncaged Minds for publication. Reynolds identifies Defendant Wiseman as the mailroom staff member who threatened him with retaliation for filing grievances, and adds that Wiseman has made the administrative grievance process "unavailable" to him for fear of further retaliation. (*Id.* at 7-8). Reynolds additionally alleges that Defendants Banton and Ansley have taunted him by sending numerous notifications of rejected "incoming" mail, which Reynolds claims is in retaliation for his filing of the sensitive grievance. (*Id.* at 8).

Reynolds has submitted the following four motions requesting injunctive relief. For the sake of clarity, the undersigned notes that this PF&R **does not** address the pending motions for summary judgment, or various other motions filed by Reynolds concerning the production of evidence. This PF&R only analyzes the propriety of granting preliminary injunctive relief as requested by Reynolds in his four pending motions seeking that form of relief.

## II.   **Plaintiff's Motions for Preliminary Injunction and Restraining Order**

### A.   **Reynolds's Motion for Preliminary Injunction**

On December 23, 2020, Reynolds filed a Motion for Preliminary Injunction. (ECF No. 21). Reynolds states that he is "an author of nearly a dozen urban books dealing with the realities of being black." (*Id.* at 1). He asserts that he is being denied his First Amendment rights of free speech and expression by Defendants, who refuse to allow him to mail his manuscripts to his publisher. (*Id.* at 1-2). Reynolds believes that this refusal is in direct retaliation for his filing of grievances against employees of the

correctional facility. (ECF No. 21 at 2). Reynolds argues that his freedom of expression extends to the publication and dissemination of his written materials, and an inmate possesses the right to be free from retaliation for the filing of a grievance. (*Id.* at 2).

In addition, Reynolds moves the court to issue a subpoena to "SmartJailMail.com," a company based in Pinellas Park, Florida. (*Id.* at 3-4). Reynolds contends that this company scans each prisoner's incoming mail, destroys the original, and delivers a copy to the prisoner. (*Id.* at 2-3). Reynolds believes that much of his incoming mail has been unlawfully withheld by FCI Beckley staff, and that the documents retrieved by the subpoena would "preserve the evidence's integrity" and "reveal further the retaliatory actions of Defendants." (*Id.* at 3). Reynolds requests relief in the form of a preliminary injunction ordering that his manuscript be mailed out and his rejected or withheld "incoming mail" be preserved. (*Id.* at 4).

## B.    Reynolds's Motion to Order Defendant Ansley to Cease with Retaliation

On March 8, 2021, Reynolds filed a Motion to Order Defendant Ansley to Cease with Retaliation. (ECF No. 42). Reynolds claims that he has placed before the Court countless pieces of evidence "reflecting how his civil rights are being violated under the color of law." (*Id.* at 2). He alleges that more incoming mail has been "capriciously rejected by M. Ansley." (ECF No. 42 at 2). Reynolds requests an order directing Defendant Ansley to cease his "retaliatory acts" against Reynolds. (*Id.*). He attaches an incident report filed by Defendant Ansley, which states that Reynold's incoming mail "explains the royalties he would receive once the book was published. It also explained that his company, [Uncaged Minds], would have the digital rights to the book." (*Id.* at 4).

5

**C.     Reynolds's Motion for Preliminary Injunction, or in the Alternative, Motion to Order Transfer**

On April 5, 2021, Reynolds filed a Motion for Preliminary Injunction, or in the Alternative, a Motion to Order Transfer. (ECF No. 49). He alleges that the prison officials at FCI Beckley are in a "never-ending state of retaliation" against him. (*Id.* at 1-2). Reynolds cites to the Federal Bureau of Prisons' ("BOP") Regulation 5270.09, which he claims "makes clear: sanctions will not be imposed in a capricious or retaliatory manner." (*Id.* at 2). Reynolds claims that SIS Officer Austin issued a "sham incident report" relating to Reynolds's use of the mail, and a week prior "Defendant Ansley issued an identical-like incident report that was 'thrown out' due to the speculative nature of the incident report." (*Id.*). Reynolds attaches a copy of the incident report to his motion. (*Id.* at 7). The incident report is dated March 25, 2021 and charges Reynolds with abusing mail and disrupting mail monitoring by conducting a business without authorization. (*Id.*). According to the incident report, Reynolds has been conducting "boot camp style courses" that resulted in the publication of eleven new books, which Reynolds sells through Amazon and major book selling outlets. The incident report references other documents, which purportedly demonstrate that Reynolds is operating a publishing business in violation of BOP policy. (*Id.*).

Citing Federal Regulation P5265.14, Reynolds argues that an inmate can direct business activity while incarcerated, using correspondence necessary to protect property and funds that were legitimately the inmate's at the time of commitment. (ECF No. 49). Furthermore, Reynolds alleges that BOP Regulation 5350.27 allows inmates to publish in a variety of venues, and he is simply exercising his freedom of expression. (*Id.* at 2-3). He claims that the actions of FCI Beckley staff have forced him to not write or seek to

publish his next book, which is a violation of his First Amendment rights. (*Id*.). Reynolds claims to have satisfied the demands of Federal Rule of Civil Procedure 65, stating that he has (1) a likelihood of success in litigation, and (2) suffered irreparable injury and will continue to suffer injury, absent an injunction by this Court. (*Id*.).

Reynolds further moves this Court, in the alternative, to transfer him to another federal institution within 500 miles of his release residence. (*Id*. at 4). He requests that such transfer "not be punitive from the SHU, and that his custody level remain where it presently is now." (*Id*.).

### D.    Reynolds's Motion to Reverse Retaliatory Actions Via Restraining Order of Court

On May 13, 2021, Reynolds filed a Motion to Reverse Retaliatory Actions Via Restraining Order of Court. (ECF No. 57). Reynolds alleges that after filing affidavits detailing the "constant instances of retaliation," the "vengeance has only gotten more incendiary." (*Id*. at 1). Reynolds claims that, as detailed in his Affidavit, (ECF No. 52), Disciplinary Hearing Officer ("DHO") Officer Leslie threw out the incident report filed against him on March 25, 2021. (ECF No. 57 at 1-2). Then, a month later—after this court had scheduled a hearing in the instant action—DHO Leslie found Reynolds "guilty" of the charge in the incident report. (*Id*. at 2). Reynolds relies on a BOP Regulation stating that "suspended disciplinary proceedings are not to exceed two calendar weeks." (ECF No. 57 at 2). He argues that to find him "not guilty" and then find him "guilty" one month later is "not allowed and should not be allowed to stand, seeing how [Reynolds] has been seeking the Court's judicial intervention relentlessly." (*Id*.).

### III.    <u>Defendants' Response and Reynolds's Reply</u>

On June 1, 2021, Defendants filed a response to Reynolds's Motion for

Preliminary Injunction. (ECF No. 68). According to Defendants, at the heart of Reynolds's claim are manuscripts and other documents, which are the fruits of his unauthorized business activities. (*Id.* at 1). They claim that Reynolds has continued to receive all mail that conforms to BOP policy. (*Id.* at 1-2). Defendants contend that an investigation conducted at FCI Beckley beginning in June 2020 and continuing through March 2021 revealed that Reynolds was conducting unauthorized business activities, and he was subsequently sanctioned for that conduct. (*Id.* at 2). Defendants argue that injunctive relief is not available in a *Bivens* case, and by definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action. (ECF No. 68 at 2). Furthermore, Defendants claim that the Supreme Court of the United States ("Supreme Court") has not extended remedies for *Bivens* liability to anything other than monetary relief, meaning an injunction would be unavailable. (*Id.* at 3). They also claim that the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recognized that injunctive relief cannot be awarded against a government official sued in his individual capacity, citing *Kirby v. City of Elizabeth*, 388 F.3d 440, 452 (4th Cir. 2004).

Defendants also argue that Reynolds is not entitled to injunctive relief because he has failed to exhaust his administrative remedies. (*Id.*). They reject Reynolds's claim that Defendant Wiseman threatened Reynolds or told him not to file administrative remedies. (ECF No. 68 at 4). They contend that Defendant Ansley was present during the encounter between Wiseman and Reynolds and did not hear Wiseman make any threats towards Reynolds, or order him not to file administrative remedies. (*Id.*). According to Defendants, Reynolds had "no issue requesting administrative remedies forms from other BOP employees and submitting those forms to the central office *after*

8

[Reynolds] claims he was threatened." (*Id.*). They argue that Reynolds's claim of fear of reprisal for filing grievances against mailroom staff is unfounded, as his actions at the time do not reflect that fear hindered his access to the administrative remedy process or the courts. (*Id.* at 4).

Moreover, Defendants assert that, using sound correctional judgment, BOP staff has determined Reynolds is attempting to engage in prohibited business activities. (*Id.* at 6). They claim that staff from different departments of the facility, including Correctional Systems, SIS, and the DHO, have reviewed Reynolds's mail, email, telephone communications, and external social media and other websites to make this determination. (ECF No. 68 at 6). They state that "in the context of Reynolds's history of directing business activities relating to a publishing company, the manuscript may be seen as furthering the business activities." (*Id.*).

Defendants add that there is a "presumption of regularity" which attaches to the actions of government agencies, and Reynolds cannot rebut the presumption that BOP staff have properly discharged their official duties in monitoring and screening incoming and outgoing inmate mail. (*Id.* at 7-8). They also argue that Reynolds is unlikely to succeed on his claims, as 18 U.S.C. § 3626 "precludes the entry of injunctive relief with respect to conditions of confinement without the finding of a violation of Plaintiff's constitutional rights." (ECF No. 68 at 8). Additionally, Defendants contend that Reynolds has not shown a likelihood of suffering irreparable harm. (*Id.* at 9). They point out that Reynolds has not articulated any specific harm he believes is imminent, but has instead asked the Court to generally prohibit retaliation and rejection of his mail without alleging what harm he fears or anticipates. (*Id.* at 10). Moreover, Defendants argue that it is not in the public interest for such an order to be entered, as such an order

would "greatly interfere with the management of the correctional institution." (*Id.* at 10). Finally, Defendants claim that the requested relief is not appropriate in a preliminary injunction because the acts of retaliation alleged by Reynolds are related to the filing of remedies, rather than Reynold's original claim that he was prohibited from publishing his manuscripts. (*Id.* at 11). Therefore, there is no nexus between the underlying claims and the retaliation alleged in later filings. (*Id.*).

On June 9, 2021, Reynolds filed a Reply Memorandum. (ECF No. 71). In his memorandum, Reynolds claims that pursuant to Federal Rule of Civil Procedure 8, Defendants conceded his allegations by failing to file a timely response to his motions for relief. (*Id.* at 1). According to Reynolds, Defendants Wiseman and Ansley "submitted sworn declarations after the fact and waived the validity of such untimely evidence." (*Id.* at 2). He contends that both declarations refer to a "meeting," but there was not a "meeting" mentioned in his complaint. (*Id.*). Reynolds argues that if the Court allows such evidence into the proceedings, it creates a genuine dispute of material fact over whether the administrative grievance remedy was "available" considering Defendant Wiseman's alleged threat. (*Id.*). He reaffirms his claim that prisoners are not prohibited from having communications necessary to protect property and funds that were legitimately the prisoners at the time of his incarceration. (*Id.* at 3). Reynolds argues that Defendants cannot put forth any evidence that his property did not belong to him at the time of his commitment. (ECF No. 71 at 3).

Furthermore, Reynolds claims, the BOP does not restrict or review postings of a federal inmate on the internet. (*Id.* at 4). He contends that Defendants are not entitled to qualified immunity, and if granted, they will "continue lawbreaking with impunity." (*Id.*). Reynolds claims that throughout these proceedings, he has had volumes of his

mail seized or destroyed, including a short movie script, letters from his children, letters from his mother, and letters from friends. (*Id.* at 4-5). He argues that these withholdings are in direct retaliation for him engaging in "Constitutionally protected activities." (*Id.* at 5). Reynolds further asserts that Defendants failed to adequately explain how the seized mail from his children, mother, and friends advanced a legitimate interest in institutional security. (*Id.*). Reynolds moves to renew all of his motions denied as premature. (ECF No. 71 at 5). He alleges that until the Court receives the seized mail in question, it is impossible to determine a logical connection between the seized mail and Defendants' asserted objective. (*Id.* at 6).

According to Reynolds, Defendants are "seeking to suppress the evidence in their control and are willing to commit perjury to further their goals." (*Id.* at 7). Reynolds concedes that he has had "enormous amounts" of communications about books, manuscripts, editing, revision, style, graphic design, and royalties. (*Id.* at 8). However, he claims that he simply has the means and aspirations to publish and disseminate his written work. (*Id.*). Reynolds contends that his First Amendment right to expression was violated when Defendants prevented him from mailing his movie script. (*Id.* at 8-9). Reynolds cites *Elrod v. Burns*, 427 U.S. 347 (1976), arguing that the loss of First Amendment rights for even minimal periods of time unquestionably constitutes irreparable injury. (ECF No. 71 at 9). He claims that a prison staff member requested to be depicted in a book: a request which Reynolds states he obliged. (*Id.* at 10). Reynolds contends that his writings only affected prison administration after he resolved an administrative grievance issue with mailroom supervisor Hendricks, and Defendants do not dispute this fact. (*Id.*). Reynolds argues that further discovery concerning his currently withheld mail is required. (*Id.* at 10-11). He also agrees that *Bivens* does not

allow for monetary awards; however, he claims "he objects for the purposes of [the] idea that the United States Supreme Court could one day soon overturn *Bivens* in light of the blatant injustices taking place within the prison industrial complex," citing *Taylor v. Riojas*, 141 S. Ct. 52 (2020).

## IV.    <u>**Standard of Review**</u>

No plaintiff is automatically entitled to a preliminary injunction. Instead, "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal citations and quotation marks omitted). "This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo." *Weast v. Entzel*, No. 3:19-CV-4, 2019 WL 540717, at *3 (N.D.W. Va. Jan. 8, 2019), *report and recommendation adopted,* No. 3:19-CV-4, 2019 WL 366857 (N.D.W. Va. Jan. 30, 2019) (citations omitted). To succeed on a request for injunctive relief, a plaintiff must make a "clear showing" that he is entitled to such relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *also Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (holding that a motion for preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (quoting *Winter*, 555 U.S. at 22). "In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances." *Kelly v. Hill*, No. ELH-20-2531, 2021 WL 3055615, at *17 (D. Md. July 19, 2021) (citing *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994)).

Courts in the Fourth Circuit consider the following four factors in determining whether a plaintiff has met the standard for injunctive relief:

> (1) the movant's likelihood of success on the merits; (2) the likelihood that the movant will suffer irreparable harm in the absence of preliminary injunctive relief; (3) whether the balance of equities tip in the movant's favor; and (4) whether an injunction is in the public interest.

*Winter,* 555 U.S. at 20. As the moving party, the plaintiff bears the burden of establishing that each factor weighs in his favor and justifies the relief requested. *See Granny Goose Foods, Inc. v. Bhd. of 184 Teamsters and Auto Truck Drivers Local No. 70,* 415 U.S. 423, 441 (1974). "These factors are not, however, all weighted equally." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). To the contrary, the threshold determination is whether the plaintiff has shown that irreparable harm is likely to occur if an injunction is not granted. *Id.* If the plaintiff fails to demonstrate this factor, his quest for injunctive relief comes to an end. In *Scotts v. United Industries Corp,* the Fourth Circuit describes how the analysis generally proceeds:

> When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.

*Scotts,* 315 F.3d 264, 271 (4th Cir. 2002) (internal quotations and citations omitted). A showing of irreparable harm requires the likelihood of an injury that is both actual and immediate. *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983). The injury must

13

be one that cannot be adequately satisfied with a monetary award, or accurately calculated, or that involves other rare and exceptional circumstances that justify the extraordinary relief of an injunction. *Hughes*, 17 F.3d at 693-94.

Reynolds also asks the Court for a temporary restraining order ("TRO"), although at this stage of the litigation, his request should be construed as an additional motion for a preliminary injunction. Like a preliminary injunction, a TRO is an extraordinary remedy and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hancock v. Rickard*, No. CV 1:18-00024, 2018 WL 4496660, at *3 (S.D.W. Va. Aug. 13, 2018), *report and recommendation adopted,* No. CV 1:18-00024, 2018 WL 4495474 (S.D.W. Va. Sept. 19, 2018) (citing *Hoechst Diafoil Company v. Nan Ya Plastics Corporation*, 174 F.3d 411, 422 (4th Cir. 1999)). Federal Rule of Civil Procedure 65 governs the issuance of a temporary restraining order ("TRO"), stating that a court may issue a TRO "without written or oral notice to the adverse party or its attorney only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b)(1). A TRO expires in fourteen days unless the court extends it for good cause, or upon the consent of the adverse party. Fed. R. Civ. P. 65(b)(2).

Clearly, Reynolds is not seeking the very short-term relief of a TRO; instead, he requests preliminary injunctive relief until the case can be decided on the merits. This distinction is not important to a resolution of Reynolds's motions, however, because

14

both a TRO and a preliminary injunction require the same showing—the movant must demonstrate all of the following four elements: "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an [TRO] is in the public interest." *Sorenson v. Stevanus*, No. PWG-15-1653, 2015 WL 3953934, at *4 (D. Md. June 26, 2015) (citing *Winter*, 555 U.S. at 20). "The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the [TRO] were to be denied; if so, then the court must balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the [TRO] were issued." *Wallace v. S.C. Dep't of Corr.*, No. C.A.3:07-271-HMH-JRM, 2007 WL 1068236, at *3–4 (D.S.C. Mar. 29, 2007) (citing *Scotts Company*, 315 F.3d at 271).

When a request for a TRO or a preliminary injunction is made by a prisoner and is related to prison conditions, 18 U.S.C. § 3626(a)(2) provides the following guidance:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

## V.    <u>Discussion</u>

Reynolds makes two related, but independent claims. First, he alleges that his First Amendment rights to speech and expression are being violated by Defendants' refusal to mail his manuscripts for publication. Second, he claims that he is the victim of

15

retaliation for exercising his First Amendment right to access the BOP's administrative remedy process. In response, Defendants contend that Reynolds's manuscripts are not being mailed, because he is conducting a business when he publishes and sells them online. Defendants argue that a BOP regulation precludes Reynolds from conducting a business while incarcerated, and that this regulation serves a legitimate penological interest. Defendants explicitly deny Reynolds's claims of retaliation and indicate that he offers no proof of the alleged retaliation.

### A.    Reynolds's Motion for Preliminary Injunction

The law is well settled that "inmates do not lose all of their constitutional rights at the jailhouse door; they retain those rights that do not conflict with their incarceration." *Jordan v. Pugh*, 504 F. Supp.2d 1109, 1118 (D. Colo. 2007). This principle applies to inmate rights under the First Amendment. *Pell v. Procunier,* 417 U.S. 817, 822 (1974) (holding that an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). An inmate's constitutional rights may be limited to the extent necessary to achieve the essential goals of prison security, order, and discipline. *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). The burden is not on the correctional facility to prove the validity of prison regulations, but on the prisoner to disprove it. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

When deciding cases regarding First Amendment rights in the prison context, courts adopt a standard of review that focuses on the reasonableness of prison regulations; the relevant inquiry is whether the actions of prison officials were "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989). In *Turner v. Safley*, the Supreme Court discussed a four-pronged

16

analytical framework to determine whether a prison regulation that impinges on an inmate's constitutional rights is reasonably related to legitimate penological interests. 482 U.S. 78, 89-90 (1987). Under this framework, the reviewing court considers whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89 (citation and markings omitted). Next, the court examines the presence of "alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Where other avenues are available, the court should be particularly mindful of the deference owed to correctional officials when gauging the validity of the regulation. *Id.* The third factor for the court to consider "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.* Lastly, the court should determine what alternatives are available to the facility to achieve its goal. "The existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.* On the other hand, the absence of ready alternatives "is evidence of the reasonableness of a prison regulation." *Id.* (citation omitted).

Considering Reynold's Motion for Preliminary Injunction, (ECF No. 21), applying all of the relevant principles, the undersigned **FINDS** that Reynolds fails to provide sufficient grounds to merit a preliminary injunction. To begin, Reynolds does not carry his burden to show "that in the absence of a preliminary injunction," he is "*likely* to suffer *irreparable* harm before a decision on the merits can be reached." *Winter*, 755

U.S. at 22 (emphasis added). Indeed, Reynolds does not articulate any specific harm he will incur if he is not permitted to publish his manuscripts during the pendency of this case. Reynolds cites to *Elrod v. Burns* and argues that the loss of any First Amendment freedom, for even a minimal period of time, unquestionably constitutes irreparable injury. (ECF No. 21 at 4). However, *Elrod* is not applicable to this case, because the facts in *Elrod* are markedly different than those found here. First and foremost, *Elrod* does not concern the rights of an prison inmate, or the specific right of an inmate to publish manuscripts. Reynolds is not precluded from writing manuscripts; accordingly, his First Amendment right to express himself has not been entirely curtailed. Reynolds has only been prohibited from publishing his completed novels, because he is allegedly selling them as part of his own publishing business. Reynolds has not demonstrated how a delay in publishing and selling his novels constitutes irreparable harm that cannot be accurately calculated or adequately satisfied with a monetary award.

Furthermore, Reynolds has not clearly shown that he is likely to succeed on the merits of his claims. "To demonstrate a likelihood of success on the merits, '[a] plaintiff need not establish a certainty of success,' but must make a clear showing that he is likely to succeed at trial." *Courtland Company, Inc. v. Union Carbide Corporation*, No. 2:21-cv-00101, 2021 WL 1255416, at *9 (S.D.W. Va. Apr. 5, 2021) (quoting *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017)). "The BOP authorizes, and in some instances encourages, inmates to publish their writings ... Regulations also permit inmates to 'submit manuscripts (which include any form of drawing or writing, such as poetry or essays, whether fiction or non-fiction) for publication and attribution.'" *Jordan*, 504 F. Supp.2d at 1111. According to BOP Program Statement No. 5320.27, the purpose of this regulation is to "encourage inmates to use their leisure time for creative writing and to

permit the direct mailing of all manuscripts as ordinary correspondence." The expected result of the program is that "inmates will be afforded the opportunity to write and mail manuscripts for publication."

However, Program Statement No. 5320.27 does not exist in a vacuum. Other regulations, addressing the BOP's security and business operations concerns, must be reconciled with Program Statement No. 5320.27. For instance, 28 C.F.R. § 540.14(a) authorizes the BOP to screen all mail, including publications, as frequently as deemed necessary to maintain security. Title 28 C.F.R. § 540.14(d) allows the Warden of the prison to reject correspondence sent by or to an inmate if it is determined detrimental to the security of the institution. Furthermore, pursuant to 28 C.F.R. §541.3,[1] inmates are prohibited from conducting a business. *See* 28 C.F.R. §541.3, Moderate Severity Level Prohibited Act 334. Whatever protected property or liberty interest the average citizen may have in holding employment or pursuing a chosen occupation, a prisoner has no right to conduct a business while incarcerated. *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980). The Fourteenth Amendment affords no protection to inmate business activities. *Garland v. Polley*, 594 F.2d 1220, 1221-22 (8th Cir. 1979).

Defendants contend that Reynolds is not only composing and mailing manuscripts, but is engaging in a publishing business that involves his own novels, as well as works written by other inmates. They point to transcripts of communications by and with Reynolds in which the participants discuss earnings, royalties, contracts, logo designs, edits of inmate writings, and various other business-related decisions. (ECF No. 68-1 at 7, 8, 14, 17, 21). Reynolds has requested the advertising rates and email address

---

[1] At various times in the proceedings, the parties have referred to 28 C.F.R. § 541.13, Prohibited Act No. 408, or 28 C.F.R § 541.13, Prohibited Act No. 334, as the citation for the prohibited act of "conducting a business." *See* ECF Nos. 33, 42 at 5. Currently, however, the correct citation for the prohibited act of conducting a business is found at 28 C.F.R § 541.3, Prohibited Act No. 334.

of the Herald-Dispatch, a newspaper headquartered in Huntington, West Virginia. (ECF No. 68-1 at 13). The transcripts include exchanges regarding the cover of a book written by Waylon Molinaro, another inmate publishing through Uncaged Minds. (*Id.* at 16). With these transcripts, Defendants corroborate their accusation that Reynolds is conducting a publishing business, which is prohibited by BOP regulation.

Reynolds does not offer any legal or factual basis upon which the Court can conclude that the BOP regulation is unreasonable or unrelated to an legitimate penological purpose. To the contrary, at least one court has ruled in favor of a correctional facility under an analogous set of circumstances. *See Johnson v. Wilkinson*, 42 F.3d 1388, at *3 (6th Cir. 1994) (per curiam and unpublished). Although not binding in this district, in *Johnson*, the plaintiff challenged as unconstitutional a prison rule that disallowed inmates to operate a business, and thus prevented him from publishing his book. *Id.* The Sixth Circuit found that the rule did not prohibit the mere writing of a book. However, "when someone writes a book and takes other actions to turn that book into profit, whether for themselves or for others, then their actions could be considered as conducting a business." *Id.* In the instant case, as in *Johnson*, the evidence supported this conclusion. There are "several legitimate penological objectives" that such a regulation may serve: "preserving scarce prison resources to maintain security, especially with the monitoring of mail; maintaining equality among the prisoners and avoiding the 'big wheel' syndrome; and limiting the potential for perpetrating business fraud from behind bars." *Id.* at *4.

In the absence of irreparable harm and a clear showing that Reynolds is likely to succeed on the merits of his claim, the undersigned **FINDS** that Reynolds does not satisfy the standards for issuance of a preliminary injunction. Moreover, Reynolds must

show that the balance of equities tips in his favor and that an injunction advances the public's interest. *Winter*, 555 U.S. at 20. He has entirely failed to do. The BOP arguably has a legitimate interest in prohibiting inmates from conducting business activities while incarcerated. At this point, Reynolds has not demonstrated that the regulation at issue is ***not*** reasonably related to this legitimate penological interest. Therefore, the undersigned **FINDS** that the balance of equities and the public interest do not favor a preliminary injunction in this instance.

### B.    Reynolds's Motion to Order Defendant Ansley to Cease with Retaliation

The Court will next examine Reynolds's Motion to Order Defendant Ansley to Cease with Retaliation (ECF No. 42). He requests that the Court issue a preliminary injunction "directing Defendant Ansley to cease his retaliatory acts, as they violate the law of this land." (ECF No. 42 at 2). As mandated by *Winter*, Reynolds must demonstrate irreparable harm and a likelihood of success on the merits of the case. The only evidence that Reynolds supplies with his claim is an incident report filed by Defendant Ansley. (*Id.* at 4). This report states that mail sent from Reynolds's business, Uncaged Minds, contains communications regarding royalties and digital rights to Reynolds's books. (*Id.*). Reynolds also attaches the prison's explanation for rejecting pieces of his incoming mail, which states: "An inmate, unless a pre-trial detainee, may not direct a business while confined." (*Id.* at 5, 6). Given that Reynolds can contest the disciplinary charge, he has not shown that irreparable harm will occur if an injunction is not granted. Furthermore, the Court previously ordered FCI Beckley to retain and preserve any mail sent to or from Reynolds that was withheld as business correspondence. (ECF Nos. 20, 27). Consequently, should Reynolds succeed on his

claim, the mail will be released to him. Reynolds has not shown how a delay in receiving or sending his mail will result in irreparable harm.

With respect to Reynolds's claim of retaliation, the record substantiates only that Ansley has rejected some pieces of Reynolds's mail; the record does not establish, however, that Ansley's rejection of the mail is retaliatory. According to BOP regulations, inmates do not have the right to send or receive correspondence in furtherance of a business operation. The documents provided by Reynolds indicate that his mail was rejected because it was related to the "direction of an inmate's business." (ECF No. 42 at 5, 6). Consequently, Reynolds asks the Court to speculate that Ansley's actions are motivated by retaliatory animus. Without something more than Reynolds's conclusory presumption that Ansley is acting in a retaliatory fashion, Reynolds cannot clearly demonstrate the likelihood that his claim will be successful. Therefore, the undersigned **FINDS** that Reynolds has not met this burden of showing the prospect of irreparable harm, or the likelihood that he will succeed on the merits of his retaliation claim against Ansley.

### C.   Reynolds's Motion for Preliminary Injunction, in the Alternative, Motion to Order Transfer

The Court will now consider Reynolds's Motion for Preliminary Injunction, in the Alternative, Motion to Order Transfer, (ECF No. 49). This motion should be denied for the same reasons as Reynolds's previous motion for preliminary injunction, (ECF No. 21). Reynolds has not demonstrated the likelihood that he will suffer irreparable harm if a preliminary injunction is not granted, and likewise has failed to clearly show that he is likely to succeed on the merits of the case. If Reynolds is operating a business, as Defendants claim, he is acting in violation of a BOP regulation. Reynolds has not

provided any basis for the Court to conclude that the regulation fails to serve a legitimate penological interest. Therefore, the undersigned **FINDS** that Reynolds fails to meet the exacting standards necessary to justify a preliminary injunction.

Reynolds also moves the Court to transfer him to another federal institution within 500 miles of his release residence. (ECF No. 49 at 4). Even if Reynolds were entitled to a preliminary injunction, the requested relief of a transfer to another federal institution is not available from this court. A prisoner has no constitutional right to be confined at any particular correctional facility. *Moody v. Daggett*, 429 U.S. 78, 88, (1976). "[O]nly the Bureau of Prisons has the actual authority to designate the place of incarceration. The Bureau of Prisons is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences." *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993) (citations omitted). Thus, "a district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence," *United States v. Serafini*, 233 F.3d 758, 778 n. 23 (3d Cir.2000) (emphasis omitted), and prisoner transfers "are functions within the discretion of the BOP." *United States v. McCaster*, No. 06-20310-STA, 2008 WL 4528037, *2 (W.D. Tenn. Oct. 6, 2008) (citing *Caderno v. Thomas*, 50 F. App'x 200 (6th Cir. 2002)); see also *Daniel v. Craig*, No. 5:07-cv-00465, 5:07-cv-00577, 2008 WL 644883, *2 (S.D.W. Va. Mar. 7, 2008). Therefore, the undersigned **FINDS** that Reynolds is not entitled to relief on this motion.

### D.    Reynolds's Motion to Reverse Retaliatory Actions Via Restraining Order of Court

In examining this motion, (ECF No. 57), it is unnecessary to analyze the four temporary restraining order/preliminary injunction requirements, because the motion

is premature. Reynolds complains about an adverse disciplinary finding. However, before a federal prisoner may challenge a disciplinary procedure in federal court, he must exhaust administrative remedies. *See McClung v. Shearin*, 90 F. Appx. 444, 445 (4th Cir. 2004). A "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." *Id.*

The BOP's Administrative Remedy Program is found at 28 C.F.R. §§ 542.10 through 542.19. When contesting the findings of a DHO, a federal prisoner must first submit an appeal of the DHO report to the Regional Director for the region where the inmate is located. 28 C.F.R § 542.14(d)(2). If the prisoner is not satisfied with the response of the Regional Director, he may file an appeal of the Regional Director's response to the BOP's General Counsel within thirty days of the date that the Regional Director generated the response. 28 C.F.R. §§ 542.15(a). As an appeal to the General Counsel is the final step in the administrative remedy process, the prisoner may only file suit *after* receiving an unsatisfactory response from General Counsel.

It is clear from the record that Reynolds filed his Motion to Reverse Retaliatory Actions before completing all of the mandated steps for administrative exhaustion. According to Reynolds, DHO Leslie ruled against him at some point after a hearing held on April 12, 2021. Reynolds submitted his motion for mailing on May 8, 2021—less than one month later. (ECF No. 57 at 2). Not only was the motion filed before the administrative process could have been completed, but Reynolds makes no showing that he even attempted to appeal the DHO finding. Reynolds has alleged in the past that Defendant Wiseman "ordered" him not to file any further grievances related to his mail delivery, but Reynolds has not made similar allegations in regard to the DHO's findings.

24

As there is no evidence to suggest that Reynolds has taken any steps to administratively challenge the DHO's determination, and—based on the timing of Reynolds's motion—the process could not have been completed, the undersigned **FINDS** that Reynolds's Motion to Reverse Retaliatory Actions Via Restraining Order of Court (ECF No. 57) is premature. Reynolds provides no showing of cause and prejudice to excuse the exhaustion requirement; therefore, the motion should be denied, without prejudice to Reynolds's subsequent filing of the claim once it is administratively exhausted.

## VI.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and **RECOMMENDS** that Reynolds's Renewed Motion for Preliminary Injunction, (ECF Nos. 21), be **DENIED**; Reynolds's Motion to Order Defendant Ansley to Cease with Retaliation, (ECF No. 42), be **DENIED**; Reynolds's Motion for Preliminary Injunction, or in the Alternative, Motion to Order Transfer, (ECF No. 49), be **DENIED**; and Reynolds's Motion to Reverse Retaliatory Actions Via Restraining Order of Court, (ECF No. 57), be **DENIED.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the

"Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** July 26, 2021

Cheryl A. Eifert
United States Magistrate Judge