IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**DONALD REYNOLDS,**

      **Plaintiff,**

v.                                                          **Case No. 5:20-cv-00753**

**FEDERAL BUREAU OF PRISONS,**
**D.L. YOUNG, Warden, in his official capacity;**
**MANNING, SIS Officer, in his official capacity;**
**SWEENEY, SIS Officer, in his official capacity;**
**WISEMAN, BANTON, and ANSLEY, in their**
**official capacities,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Plaintiff's Motion to Amend as Ordered by the Court. (ECF No. 212). Defendants have filed a response in opposition to the Motion, (ECF No. 220), and Plaintiff has submitted a reply memorandum. (ECF No. 228). This case is assigned to the Honorable Frank W. Volk, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Motion to Amend.

**I.    Relevant Background**

Donald Reynolds has been an inmate at Federal Correctional Institution ("FCI") Beckley since January 2020. During his stay at FCI Beckley, Reynolds has published multiple novels through his publishing company, Uncaged Minds. Reynolds complains

1

that in May and October 2020, he had disagreements with employees of the Federal Bureau of Prisons ("BOP") who worked in the mail room at FCI Beckley and were, in Reynolds's view, mishandling or withholding his mail, including his manuscripts. Reynolds filed grievances over these instances. The grievance filed in May was resolved amicably; however, the October grievance allegedly triggered retaliation by the mail room staff—in particular, by Defendants Wiseman, Ansley, and Bannon. Reynolds claims that Wiseman confronted him about the October grievance and threatened that Reynolds would not receive his mail if he continued to complain about the mail handling. (ECF No. 12 at 5). Reynolds asserts that his incoming and outgoing mail have been repeatedly rejected since that time by the mail room defendants; by Defendants Manning and Sweeny, who are Special Investigative Services ("SIS") Officers; and by Defendant Young, the warden of FCI Beckley.

In response, Defendants concede that some of Reynolds's mail has been withheld or rejected, but contend that this has been done because the mail in question violates the policies and regulations of FCI Beckley and the BOP. Of relevance to Reynolds's Motion to Amend, Defendants claim that some of Reynolds's mail has been rejected or withheld, because the mail was generated as part of an unauthorized business being conducted by Reynolds in violation of the BOP's disciplinary code. Reynolds disputes this characterization of his mail and asks the Court for prospective injunctive relief ordering Defendants to stop interfering with his First Amendment right to send and receive mail.

On March 25, 2021, Reynolds received an Incident Report charging him with Conducting a Business Without Authorization in violation of BOP disciplinary code 334 and with Disruptive Conduct Most like Mail Abuse, Disrupt Monitoring in violation of BOP disciplinary code 299. (ECF No. 220-1). A hearing was held on the disciplinary

2

charges before a Disciplinary Hearing Officer ("DHO") on May 3, 2021. (*Id.*). At the conclusion of the hearing, the DHO found Reynolds guilty of one charge—Conducting a Business Without Authorization. (ECF No. 220-1). Reynolds was sanctioned with a loss of email and telephone privileges for two months. He did not lose any good conduct time. (*Id.*).

## II.   Motion to Amend, Response in Opposition, and Reply

In his Motion to Amend, Reynolds seeks to challenge the DHO's finding that Reynolds was conducting an unauthorized business. (ECF No. 212). Reynolds claims that the misconduct finding precludes him from being transferred to another institution, raises his custody level by three points, and prevents him from enjoying liberties at FCI Beckley, such as participation in certain types of institutional employment. (*Id.*).

In response, Defendants argue that the Motion to Amend should be denied because the disciplinary process satisfied Reynolds's right to due process. (ECF No. 220). In addition, Defendants claim that the punishments imposed on Reynolds did not affect his liberty interests. They assert that Reynolds has no constitutional right to a transfer, prison employment, or a certain custody level. (*Id.*). Defendants argue that in the absence of a protected constitutional interest, Reynolds's proposed amendment is futile and should be denied.

Defendants also contend that the amendment is improper, because the claim Reynolds seeks to add is unrelated to the claim asserted in the complaint, is based on an event that occurred more than four months after the complaint was filed, and is directed toward an individual who is not a named defendant in this case. (*Id.*). Defendants argue that Reynolds should not be permitted to introduce a new and unrelated claim into this proceeding under the guise of an amendment to the complaint.

3

In reply, Reynolds points out that he raised the issue of the incident report with the Court in May 2021; therefore, it is not a "new" claim. (ECF No. 228 at 1-3). However, he was precluded from adding the claim to his complaint at that time, because he was required to exhaust his administrative remedies. In regard to the merits of his challenge to the DHO's finding, Reynolds describes the disciplinary process as a sham and states that he should not have been punished for engaging in conduct designed to protect property that was legitimately his at the time of his commitment. Indeed, he argues that BOP policy allows inmates to send and receive business correspondence related to pre-existing assets. He disagrees with Defendants' argument that he cannot dispute the disciplinary finding because his liberty rights were not implicated, stating that misconduct reports raise an inmate's recidivism rate and, thereby, reduces the amount of good conduct time the inmate can receive under the Second Chance Act. (*Id*. at 3). Reynolds also attacks the BOP's disciplinary code 334, contending that the phrase "conducting a business" is vague and ambiguous and should be voided. (*Id*. at 5).

### III.  Standard of Review

Amended complaints are governed by Federal Rule of Civil Procedure 15. Rule 15(a)(1) addresses amendments that are allowed as a matter of course; those that occur when the plaintiff amends the complaint within twenty-one days after serving it on the defendant, or within twenty-one days after a responsive pleading or motion to dismiss is filed under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases—such as the instant case—the plaintiff may only amend the complaint with the opposing party's written consent, or with leave of court. Fed. R. Civ. P. 15(a)(2). Here, the opposing party does not consent; therefore, an amendment to the complaint requires leave of court.

Rule 15(a)(2) provides guidance to the court when considering a motion for leave to amend the complaint. Rule 15(a)(2) directs that the court should "freely give leave" to file an amended complaint "when justice so requires." *See also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."). Generally, leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). An amendment is futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007) *overruled on other grounds by Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009)). "In determining whether a proposed amendment is futile, a court may consider whether the proposed amendment could withstand a motion to dismiss." *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, No. 1:10CV653, 2010 WL 3522084, at *2 (E.D. Va. Sept. 1, 2010) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); *also Johnson*, 785 F.2d at 510 (holding that a motion for leave to amend should be denied "when the proposed amendment is clearly insufficient or frivolous on its face.") (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)); *Jones v. N.Y. Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999) (finding that amendments subject to "immediate dismissal" for failure to state a claim are "futile" and should not be allowed).

**IV.    Discussion**

Applying the relevant standard of review, the undersigned **FINDS** that Reynolds's proposed amendment to the complaint cannot withstand a motion to dismiss. Therefore, the proposed amendment is futile, and the Motion to Amend should be denied. Because the amendment is futile in the first instance, the undersigned need not consider Defendants' argument that the proposed claim is unrelated to the original pleading and thus inappropriate to add in this action.

### *A. The disciplinary punishment imposed on Reynolds does not implicate the Due Process Clause*

The Due Process Clause of the Fifth Amendment to the United States Constitution protects inmates from deprivations of life, liberty, or property without due process of law. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). When the penalty for a prison disciplinary infraction does not affect the length of the prisoner's term of confinement, his constitutionally protected interests are limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472, 484, (1995).

The law is well settled that an inmate's loss of privileges typically will not implicate the Due Process Clause. *Shirley v. Woodson*, No. 7:19-CV-00535, 2020 WL 2263516, at *2 (W.D. Va. May 7, 2020) (citing *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that "changes in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original

sentence to prison—are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently."). Furthermore, the transfer of an inmate from one facility to another is "discretionary and not mandatory in nature, and as such no liberty right is created." *Beasley v. Duncil,* 792 F. Supp. 485, 487 (S.D.W. Va.1992). The Constitution itself "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within the sentence imposed and is not otherwise violative of Constitution." *Slezak v. Evatt,* 21 F.3d 590, 594 (4th Cir. 1994) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468 (1983)) (internal markings omitted). Similarly, an inmate has no cognizable liberty interest in any prison job assignment or placement in any particular facility. *Williams v. Farrior*, 334 F. Supp. 2d 898, 904 (E.D. Va. 2004), *aff'd,* 122 Fed. Appx. 65 (4th Cir. 2005). Therefore, in view of prevailing law, none of the privileges identified by Reynolds creates a liberty interest and none gives rise to a due process review.

Reynolds claims in his reply memorandum that he has a liberty interest in the calculation of future good conduct credits he can receive under the Second Chance Act. According to Reynolds, his disciplinary finding of misconduct decreases the amount of credit he can receive by increasing his level of recidivism. However, courts in this circuit have held that an inmate does not have a constitutionally established liberty interest in the opportunity to earn future good time credits at a given rate. *See e.g. Torres v. Ishee,* No. 1:21-cv-00068-MR, 2022 WL 828959., at * (W.D.N.C. Mar. 18, 2022) (holding there is no liberty interest in earning future good time credits at a particular rate); *Allen v. Mayo*, No. 1:20CV780 (TSE/JFA), 2021 WL 1753948, at *8 (E.D. Va. May 4, 2021), *aff'd,* No. 21-6822, 2021 WL 5585751 (4th Cir. Nov. 30, 2021) (holding that an inmate has no

liberty interest in potential future credits) (citing *James v. Robinson*, 863 F. Supp. 275, 278 (E.D. Va. 1994)); *Green v. Stephen*, No. 820CV03488SALJDA, 2020 WL 9421090, at *4 (D.S.C. Nov. 18, 2020), *report and recommendation adopted,* No. 8:20-CV-3488-SAL, 2021 WL 1696858 (D.S.C. Apr. 29, 2021) ("Although a prisoner may have due process rights as to good-time credits which are taken away from him, the opportunity to earn good-time or work credits is not a constitutionally established liberty interest.") (quoting *Wiggins v. Bush*, No. 3:08-cv-3452-RBH, 2009 WL 6314994, at *1 (D.S.C. Dec. 15, 2009)); *Paylor v. Lewis*, No. 5:12-CT-3103-FL, 2016 WL 1092612, at *12 (E.D.N.C. Mar. 21, 2016) ("Plaintiff, likewise, does not have a liberty interest in maintaining a particular security or custody classification level or in earning future good-time credits at a particular rate.) (citation omitted); *McManus v. Blalock*, No. CV ELH-14-3480, 2015 WL 9183394, at *11 (D. Md. Dec. 17, 2015) ("Although prisoners are afforded due process protections when the loss of actual, earned, good-time credits is at issue, *Wolff*, 418 U.S. 539, the Supreme Court has afforded no such rights when the opportunity to earn such credit is at issue."); *Hammer v. Pearson*, 2015 WL 467536, at *1 (W.D. Va. Feb. 3, 2015) ("[I]nmates do not have a protected liberty interest in earning a specific rate of good conduct time. The effect of a classification change on the ability to earn good-time credit is too speculative to constitute a deprivation of a protected liberty interest."). Therefore, the undersigned **FINDS** that the disciplinary proceeding that Reynolds challenges did not involve a liberty interest and did not trigger a due process issue.

### B. *Reynolds received due process in the disciplinary proceedings*

Nonetheless, even assuming that Reynolds was entitled to due process protections, his proposed amended complaint must fail, because he received all of the protections mandated by law. In *Wolff,* the Supreme Court discussed the due process rights afforded

8

to a prisoner facing a disciplinary charge, determining that these rights include (1) written notice of the charge; (2) a hearing at which he or she has the qualified right to call witnesses and present documentary evidence unless doing so would present an undue hazard; and (3) a written statement detailing the evidentiary basis and reasons for the disciplinary action. *Wolff,* 418 U.S. at 563-65; *see also Tyler v. Hooks*, 945 F.3d 159, 168 (4th Cir. 2019) (citations and markings omitted). Here, Reynolds received written notice of the charges against him sufficiently in advance of the disciplinary proceeding. (ECF No. 220-1). He was permitted to have a staff representative assist him, and he was allowed to present evidence and testimony on his own behalf. (*Id.*). At the conclusion of the hearing, the DHO prepared a detailed written report setting forth the basis of her findings. The report was delivered to Reynolds on June 9, 2021. (*Id.*). Accordingly, Reynolds received the requisite due process in his disciplinary hearing.

Once published, a disciplinary officer's decision will be upheld if there is "some evidence" in the record to support the finding. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 457 (1985). "This is an exceedingly lenient standard, requiring only 'a modicum of evidence' in order 'to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.'" *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (quoting *Hill,* 472 U.S. at 455). The "some evidence" standard provides a very limited opportunity for judicial review of prison disciplinary matters. *Hill* "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." *Id.* (quoting *Hill,* 472 U.S. at 455-56). Given that this is the only question before the Court, it is not the province of the Court

9

to assess the correctness of the decision. *Masengale v. Streeval*, No. 7:19-CV-543, 2020 WL 4227559, at *4 (W.D. Va. July 23, 2020) (""[I]t is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all.").

In accordance with the above precedent, the undersigned reviewed the DHO's report. According to the report, the DHO received statements from both the charging officer and Reynolds, as well as documentary evidence consisting of copies of Reynolds's emails. The officer indicated that on March 25, 2021 he reviewed an internet posting from Uncaged Minds Publishing, which referred to Reynolds as the "owner and lead writer." (ECF No. 220-1 at 7). The posting also discussed Reynolds conducting classes in a "boot camp style course" that led to eleven new books being published and made available for sale on Amazon and "other major book selling outlets." (*Id.*). The officer conducted additional internet searches and discovered an advertisement placed by Reynolds soliciting filmmakers to create a short film adapted from one of Reynolds's publications. (*Id.*). In addition, a review of Reynolds's emails yielded a message from Reynolds to his wife, asking her to Zelle money to his mother from Reynolds's' "royalty account;" an email attempting to secure advertising in a hip hop magazine; and a statement from Reynolds's wife referring to "his business." (*Id.*). In another email exchange, Reynolds discussed an account for sale proceeds and asked about money he was owed from the second part of a series of books he published. Although Reynolds claimed that the royalty account was more than fifteen years old and did not contain monies from recent sales, the DHO was not persuaded. (*Id.*). She found him guilty of conducting an unauthorized business, but did not find him guilty of the second charge. Given the evidence before the DHO, her guilty finding was clearly supported by "some evidence."

In his reply, Reynolds argues that he did not violate BOP policy, because he was only engaging in business conduct necessary to protect property and funds that belonged to him at the time of his commitment. (ECF No. 228 at 6-7). Reynolds raised this defense at his hearing, stating that he was using money from a royalty account that was fifteen years old. The DHO considered the defense and rejected it. This decision by the DHO was supported by some evidence given the information supplied by the charging officer that Reynolds was conducting "boot camp style courses," which resulted in the publication of eleven books, and he was actively marketing books for purchase in 2020 and 2021. According to records in his criminal case, Reynolds was sentenced in July 2007. *See United States v. Reynolds,* CR106-00008-02 (S.D. Ga. Jul. 31, 2007), at ECF No. 159. Most, if not all, of the novels Reynolds published through Uncaged Minds were written while he was in prison and are currently for sale on Amazon. Therefore, the DHO had sufficient evidence to conclude that, even if Reynolds's royalty account existed prior to his commitment, the funds being placed into the account were generated after his incarceration. The DHO added that Reynolds did not offer any evidence to contradict that conclusion.

In view of the DHO's report, Reynolds's failure to show a liberty interest in dispute, and the due process protections provided to Reynolds, the undersigned **FINDS** that there is no merit to the claim Reynolds seeks to add to his complaint. As such, justice would not be served by granting Reynolds leave to amend his complaint, and the Motion to Amend should be denied.

### V. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that

the Plaintiff's Motion to Amend, (ECF No. 212), be **DENIED.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** April 12, 2022

Cheryl A. Eifert
United States Magistrate Judge