IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**DONALD REYNOLDS,**

      **Plaintiff,**

v.                                                                              Case No. 5:20-cv-00753

**FEDERAL BUREAU OF PRISON,**
**D.L. YOUNG, Warden, in his official capacity;**
**MANNING, SIS Officer, in his official capacity;**
**SWEENEY, SIS Officer, in his official capacity;**
**WISEMAN, BANTON, and ANSLEY, in their**
**official capacities,**

      **Defendants.**

### MEMORANDUM OPINION and ORDER

Pending are eight motions filed by Plaintiff. (ECF Nos. 251, 254, 256, 257, 259, 260, 265, 276). By way of background, the Court notes that the period of time at issue in this case is October 2020 through the present.[1] Between March 24, 2020 and June 30, 2021, Federal Correctional Institution ("FCI") Beckley participated in a pilot program relating to the processing of inmate mail, which involved a third-party vendor. (ECF No. 219-1). The vendor received the inmate mail, scanned it, and forwarded a copy to FCI Beckley for staff review. The mail was given a reference number, and if rejected, a generated rejection slip would append the reference number. (*Id.*). When the pilot program terminated, rejected mail was not given a reference number or an appended

---

[1] Plaintiff also complains about an incident in March 2020, but states that the ongoing and persistent mishandling of his mail did not begin until October 2020, after Plaintiff filed a grievance complaining about the mailroom. (ECF No. 12 at 5-6).

1

rejection slip. Accordingly, some of the mail in dispute received a reference number and generated rejection slip, while some did not, making it difficult to match post-pilot program rejection slips with particular items of mail. (ECF No. 219-1 at 4-5).

Having considered the motions, responses, and replies, the Court **ORDERS** as follows:

1. Plaintiff seeks to have the mail, which was reviewed by the undersigned *in camera*, preserved on the record for review by the United States Court of Appeals for the Fourth Circuit, if necessary. (ECF No. 251). Defendants do not object to the motion, but ask that the mail be placed on the record under seal, because giving Plaintiff access to the rejected mail thwarts the policies and procedures in place at FCI Beckley. (ECF No. 267). Plaintiff objects to having the mail placed under seal and, instead, wants the mail redacted and filed; thereby, allowing him and the senders an opportunity to challenge FCI Beckley's rejection of the mail. (ECF No. 279).

Having considered the arguments, the Court **GRANTS** the motion, (**ECF No. 251**), with the caveat that the mail should be filed **UNDER SEAL**. Therefore, Defendants are **ORDERED** to file clean copies of the mail provided to the Court for *in camera* review, under seal, within **fourteen days** of the date of this Order. The mail may be supplied to the Clerk on a CD or as printed copies. Defendants need not provide Plaintiff with a copy of the mail, but should separately file a notice or certificate confirming for Plaintiff that the mail has been given to the Clerk of Court. The Clerk is hereby **ORDERED** to file the mail under seal to preserve it for appellate review. The undersigned is cognizant of the well-established Fourth Circuit precedent recognizing a presumption in favor of public access to judicial records. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288 (4th Cir. 2000). As stated in *Ashcraft,* before sealing a document, the Court must follow a three-step process:

(1) provide public notice of the request to seal; (2) consider less drastic alternatives to sealing the document; and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting alternatives. *Id.* at 302. In this case, the mail shall be sealed and will be designated as sealed on the Court's docket. The Court deems this sufficient notice to interested members of the public. The Court has considered less drastic alternatives to sealing the documents, but in view of the penological interests involved and the burden of redacting the mail in violation of the policies of FCI Beckley, alternatives to wholesale sealing are not feasible at this time. Put simply, if FCI Beckley is forced to give Plaintiff mail that has been rejected before it is determined that the rejection was improper, then this will violate correctional facility policy and encourage other inmates to initiate litigation in a back door effort to obtain rejected mail.

In his motion, Plaintiff also complains that "due process of law requires the mail to be returned to the senders," which has not been done. Apparently, Plaintiff forgets that he asked the Court to have all evidence "preserved and maintained." (ECF Nos. 8, 26). Since the relevant evidence in this case includes the rejected mail, FCI Beckley and its vendor were ordered to preserve and maintain Plaintiff's rejected mail, storing it in a safe and segregated location. (ECF Nos. 20, 27). For this reason, the due process rights of Plaintiff and the mail senders were not violated; instead, FCI Beckley and its vendor have merely complied with the Court's order. Moreover, as Defendants emphasize, during the pilot program, senders of mail could enroll, without charge, in MailGuardTracker.com, a program that enabled the senders to track postal mail delivery to FCI Beckley, which in turn, allowed them to view delivery status, receive notifications of mail that was rejected, download copies of mail that was received and processed, and challenge rejections. (ECF No. 267 at 2).

2. Plaintiff renews his motion for the release of greeting cards and advertisements. (ECF No. 254). He argues that, contrary to Defendants' prior representation, the policy in effect at FCI Beckley at the time the greeting cards were sent to Plaintiff allowed inmates to receive copies of the cards. He also claims that inmates have always been permitted to receive advertisements, and he objects to the Court's "tacit upholding" of Defendants' mail tampering and misconduct. (*Id.*). He attaches an email that he sent to staff recounting a conversation he had with the assistant warden confirming that the policy of giving inmates copies of greeting cards was placed into effect in 2018 and had not been amended. He also attaches copies of advertisements he received while housed at FCI Beckley. (*Id.*).

In response, Defendants acknowledge that Plaintiff had a conversation with Assistant Warden Rich, who advised Plaintiff that the greeting card policy of providing copies to inmates had not changed since 2018. (ECF No. 268 at 2). However, Assistant Warden Rich, who arrived at FCI Beckley in November 2019, was referring to a general Bureau of Prisons memorandum. In a declaration, Assistant Warden Rich states he was unaware when he spoke with Plaintiff that Warden Young had issued a separate memorandum in 2017 that further restricted the delivery of greeting cards at FCI Beckley. (ECF No. 268-1). The additional restrictions were not removed until March 31, 2022. Accordingly, prior to that date, greeting cards to inmates were rejected. Defendants attach the pertinent memoranda in support. (ECF No. 268-1 at 4-9).

With respect to advertisements, Defendants contend that during the pilot program, advertisements were banned in their entirety, because most of the advertisements were for products and services prohibited at FCI Beckley. (ECF No. 268 at 2). The policy of banning advertisements during the pilot program was confirmed

4

through the declaration of George Yurkovich, a Supervisory Correctional Systems Specialist at FCI Beckley. (ECF No. 268-2). However, when the pilot program terminated in July 2021, the ban on advertisements was discontinued. Accordingly, Plaintiff has received advertisements since that date.

In an affidavit filed by Reynolds, (ECF No. 284), he disputes that advertisements were banned during the pilot program, emphasizing that he received advertisements between March 2020 and June 2021. He claims that the rejection of advertisements was arbitrary and inconsistent, and adds that Defendants provided the Court with false representations regarding the mailroom policies and procedures. (ECF No. 284). He attaches one advertisement that he claims to have received during the pilot program. (*Id.* at 4).

Plaintiff does not contest the propriety of FCI Beckley's decision to place greater restrictions on the delivery of greeting cards, or its decision to ban advertisements during the pilot program. Rather, he contends that the mailroom policies were not consistently enforced by FCI Beckley staff and he believes that he was singled out for mistreatment. Even if Reynolds is correct in his suspicion that he was targeted by mailroom staff, the only issue raised in the motion is whether Reynolds should now receive copies of greeting cards and advertisements previously rejected in compliance with alleged mailroom policies in existence at the time of the rejections. As already explained to Plaintiff, the Court will not order Defendants to take action inconsistent with the policies in place at the relevant time. Therefore, this motion, (**ECF No. 254**), is **DENIED.**

3. After conducting an *in camera* review of Plaintiff's rejected mail, the Court issued an Order asking for additional information regarding eleven pieces of rejected mail. (ECF No. 235). Defendants provided the information with a second notice of

production, which included an explanatory declaration by George Yurkovich submitted for *in camera* review. (ECF No. 241). Plaintiff moves the Court for an order allowing him to receive the declaration. (**ECF No. 256**). Defendants filed a response to Plaintiff's motion, indicating that they have no objection to disclosure of the declaration. (ECF No. 269). Despite the lack of objection from Defendants, Plaintiff filed a reply in which he complains that he did not receive a copy of the Court's order concerning the *in camera* review and asks the Court to order Defendants to go through each one of the eleven rejected pieces of mail and "excise the exact words or paragraph that they say offends the BOP policy that was in place at the time." (ECF No. 282).

Given the lack of objection by Defendants, the Court **GRANTS** Plaintiff's motion for a copy of the declaration. (**ECF No. 256**). Within **fourteen days** of the date of this Order, Defendants shall file a copy of the Supplemental Declaration of George Yurkovich dated April 27, 2022 and provided to the Court on April 28, 2022 and shall serve Plaintiff with a copy. The declaration provides sufficient information to place Plaintiff on notice as to the reason for the rejection of each piece of mail. Therefore, the Court declines to order Defendants to excise exact words or paragraphs.

4. Plaintiff moves the Court to order Defendants to provide the corresponding rejection slips for three pieces of mail, including the pieces found at Bates-stamped copies AddMail 000011-000012; AddMail 000115-000116; and AddMail 000227-000228. (ECF No. 257). Defendants respond that they have provided Plaintiff with all of the rejection slips in their possession. Defendants further indicate that they did not reject AddMail 000115-000116 or AddMail 000227-000228. In his reply, Plaintiff veers off of the topic of his motion and complains about other mail being rejected. (ECF No. 280).

The Court **DENIES** the motion, (ECF No. 257), because Defendants cannot

6

produce rejection slips that they do not possess or cannot locate after a reasonable search. However, the Court **ORDERS** Defendants, within **fourteen days** of the date of this Order, to serve Plaintiff with copies of the documents Bates-stamped AddMail 000115-000116 and AddMail 000227-000228. An explanation for the rejection of AddMail 000011-000012 will be provided to Plaintiff in the declaration of George Yurkovich, which will be filed by Defendants pursuant to this Order. Defendants shall file a notice or certificate confirming that they have given Plaintiff the declaration and the two pieces of mail indicated above.

5. Plaintiff seeks to conduct additional discovery. (ECF No. 259). Defendants argue in opposition that the discovery requested pertains to a new claim for relief—one that is not included in Plaintiff's amended complaint and for which he has not exhausted administrative remedies. The Court agrees with Defendants. The discovery sought by Plaintiff is not relevant to the two existing claims and defenses—that being, (1) whether the mailroom wrongfully rejected Plaintiff's mail and (2) whether Plaintiff exhausted his administrative remedies prior to filing suit. Finding no justification for extending discovery, the undersigned **DENIES** the motion requesting additional discovery. (**ECF No. 259**).

6. Plaintiff moves the Court to order Defendants to produce AddMail 000115-000116 and AddMail 000001-000003. He also seeks to renew his motion for preliminary injunction. (ECF No. 260). Plaintiff's motion, (**ECF No. 260**), is **DENIED**. Plaintiff's request for AddMail 000115-000116 is repetitive of his prior motion. (ECF 257). That matter has already been addressed above. His motions for a preliminary injunction were also previously raised and were rejected by the Court. (ECF Nos. 79, 87). Therefore, Plaintiff cannot "renew" the motions. Lastly, AddMail 000001-000003 are notices that

7

were provided to the *senders* of mail to Plaintiff, not notices that were directed to Plaintiff. Consequently, Plaintiff is not entitled to receive the notices. Nevertheless, Defendants attached the notices to their response, so Plaintiff now has them. (ECF No. 272-1).

7. Plaintiff again moves for the production of his rejected greeting cards and advertisements. (ECF No. 265). He attaches a birthday card from his mother that he recently received and directs the Court to copies of advertisements he filed as attachments to his reply memorandum, which he claims he received during the pilot program. (ECF Nos. 277, 283). The Court notes that none of the advertisements are dated but they do include reference numbers, which suggests that they were provided to Plaintiff during the pilot program. He maintains that if he received advertisements during the pilot program, then Defendants have been lying to the Court about a ban on advertisements. (ECF No. 277). Defendants reiterate their prior contentions and arguments in opposition to the motion.

The undersigned has already addressed this issue on multiple occasions and sees no reason at this time to change the prior ruling. Accordingly, the motion is **DENIED**. (**ECF No. 265**). Plaintiff has been advised that the policy on greeting cards changed in March 2022. As such, he correctly received the card from his mother, because it was sent to him in May 2022. Contrary to Plaintiff's belief, his receipt of the birthday card does not demonstrate that Defendants lied to or "duped" the Court. Likewise, the fact that Plaintiff may have received some advertisements when he purportedly was not supposed to receive them is not a constitutional violation, nor does it prove that advertisements were not banned. The receipt of advertisements may simply reflect that staff members were not always careful in rejecting mail that should, by policy, have been rejected. Clearly, the

mailroom policies at FCI Beckley changed over time—even during the pendency of this case. However, policy changes do not entitle Plaintiff to receive mail that was previously rejected in accordance with a policy that was in effect at the time of rejection.

8. Plaintiff asks the Court to take judicial notice of three matters. (**ECF No. 276**). First, he wants the Court to take notice that an earlier motion of his was denied as premature. As there is no reason to take judicial notice of a ruling by this Court entered in this litigation for use in this case, that portion of the motion is **DENIED**. Moreover, the ruling is a matter of record. Second, Plaintiff wants the Court to take judicial notice of one publication and one regulation: BOP Program Statement 5265.14 and 28 C.F.R § 540.14, respectively. As there is no objection from Defendants, the Court **GRANTS** the motion and takes judicial notice of the BOP Program Statement and the regulation.

The Clerk is directed to provide a copy of this Order to Plaintiff and counsel of record.

**ENTERED:** August 18, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge