UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

DONALD REYNOLDS,

    Plaintiff,

v.                                            CIVIL ACTION NO. 5:20-cv-00753

D.L. YOUNG,
MANNING,
SWEENY,
WISEMAN,
BANTON,
ANSLEY, and
FEDERAL BUREAU OF PRISONS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are Defendants' motion for summary judgment, filed May 13, 2022 [Doc. 246], and Plaintiff Donald Reynolds' motion for summary judgment, filed June 3, 2022 [Doc. 261]. The matters are ready for adjudication.

### I.

On November 4, 2020, Mr. Reynolds, an inmate at Federal Correctional Institution ("FCI") Beckley, instituted this action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against several employees. [Doc. 2]. He alleges that in May 2020, Defendants Manning and Sweeny, Special Investigative Services ("SIS") Technicians at FCI Beckley, prohibited the mailing of and then destroyed three manuscripts he had written [Doc. 12

at 4]. In response, Mr. Reynolds claims he filed a grievance and informally resolved the situation with the mailroom supervisor. *Id.*

Despite this resolution, several months later in October 2020, Mr. Reynolds alleges he filed another grievance after not receiving a few pieces of mail. *Id.* at 5. This time, however, Mr. Reynolds claims that Wiseman, a Correctional Systems Officer based in the mailroom, threatened to retaliate against him unless he stopped filing grievances. *Id.* In response, Mr. Reynolds claims to have filed a sensitive grievance with the Bureau of Prisons ("BOP") Central Office. *Id.* at 6. Moreover, after his encounter with Wiseman, Mr. Reynolds alleges that mailroom employees retaliated against him and improperly rejected pieces of his incoming and outgoing mail. *Id.* On November 16, 2020, Mr. Reynolds received notice that his sensitive grievance had been denied for various reasons, including that the claim was not of a sensitive nature. [Doc. 16 at 14].

Based on these allegations, Mr. Reynolds seeks an injunction prohibiting the Defendants from improperly rejecting pieces of his incoming and outgoing mail in retaliation for filing grievances. [Doc. 12 at 9, 207 at 3]. This action was previously referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission of proposed findings and a recommendation ("PF&R"). [Doc. 18]. On December 20, 2022, Magistrate Judge Eifert filed a PF&R, recommending that the Court grant Defendants' motion for summary judgment and deny Mr. Reynolds' motion for summary judgment. [Doc. 306]. She determined that Mr. Reynolds had failed to exhaust his administrative remedies and, alternatively, that he was not entitled to injunctive relief. *Id.* Mr. Reynolds timely objected on January 1, 2023, raising numerous issues. [Doc. 307].

II.

The Court is required "to make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court need not review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140 (1985). Further, the Court need not conduct de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

III.

Mr. Reynolds' numerous objections reduce to six issues. First, he contends that he either exhausted or was unable to exhaust his administrative remedies. [Doc. 307 at 8-10, 12-13]. Mr. Reynolds next asserts that when mail was rejected, he and the senders never received notice. *Id.* at 1-2, 4-5, 6-7, 12, 13, 14, 15, 18. Additionally, Mr. Reynolds claims that between June and October 2020, he filed numerous "cop out" forms regarding his mishandled mail, *id.* at 2-3, 11, and that he did not violate the BOP's prohibition against business activity, *id.* at 8, 19-22. Mr. Reynolds moreover requests the return of allegedly improperly rejected mail, *id* at 14, 17, 18, and, finally, raises several miscellaneous factual issues, *id.* at 3-4, 5, 6, 14, 15-16, 16-17.

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

*A. Administrative Remedies*

After examining the evidence of record, Magistrate Judge Eifert concluded that Mr. Reynolds had failed to exhaust his administrative remedies. [Doc. 306 at 19-28]. First, she determined that he had filed his complaint prior to receiving a response to his sensitive grievance. *Id.* at 24-25. Next, she found that Wiseman did not threaten Mr. Reynolds and that, even if he did, Wiseman's actions did not render Mr. Reynolds' administrative remedies unavailable. *Id.* at 25-27. In response, Mr. Reynolds objects that Wiseman's threat did in fact provide such an exception to the administrative exhaustion requirement. [Doc. 307 at 8-10, 12-13]. Alternatively, he contends that after receiving no response from the BOP, he waited the requisite number of days before filing his complaint. *Id.* at 12.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, Title

VIII, 110 Stat. 1321 (1996), requires a prisoner to exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Consequently, "federal prisoners suing under *Bivens v. Six Unknown Fed[eral] Narcotics Agents*, 403 U.S. 388 (1971), must first exhaust inmate grievance procedures." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion, however, is an affirmative defense, *Jones v. Brock*, 549 U.S. 199, 216-17 (2007), which the defendant bears the burden of proving, *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

It is noteworthy that "an inmate is required to exhaust those, but only those, grievance procedures that are" available, or in other words "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has enumerated three examples of unavailability, *id.* at 643-44, including "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," *id.* at 644. *See, e.g.*, *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) ("A remedy is not available, therefore, to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy."); *Tuckel v. Grover*, 660 F.3d 1249, 1252-53 (10th Cir. 2011) ("[W]hen a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'"). The burden of proving unavailability rests on the inmate. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (holding that the inmate failed to make the required showing for unavailability).

The BOP provides a four-step grievance procedure. 28 C.F.R. § 542.10 *et seq.* First, an inmate must attempt to informally resolve the issue with staff. *Id.* § 542.13(a). If that is unsuccessful, the inmate must then submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 days of the "date on which the basis for the Request

5

occurred." *Id.* § 542.14(a). "An inmate who is not satisfied with the Warden's response [to his Administrative Remedy Request] may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). Then, as a final avenue for relief, "[a]n inmate . . . may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.*

Nevertheless, "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the [Administrative Remedy] Request became known at the institution," the inmate may skip the initial two steps and "submit the Request directly to the appropriate Regional Director." *Id.* § 542.14(d)(1). If the issue is determined not to be sensitive, "[t]he inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden." *Id.* Alternatively, such a rejection may also be appealed to the General Counsel. *Id.* § 542.17(c).

Contrary to Mr. Reynolds' assertion, Wiseman never admitted that he threatened him. In fact, Wiseman explicitly denies doing so. [Doc. 246-3 at 2]. Moreover, the Defendants have submitted an Office of Internal Affairs Investigative Report, which found that there was insufficient evidence to support Mr. Reynolds' allegation.[1] [Doc. 246-2]. Specifically, the report records not only Wiseman's denial, *id.* at 5, but also the denial of Banton, another Correctional Systems Officer stationed in the mailroom, who Reynolds likewise contends was present during the incident. *Id.* at 4-5. On the other hand, Mr. Reynolds' only evidence in support of his claim are

---

[1] This report may properly be considered under the public records exception to the rule against hearsay. Fed. R. Evid. 803(8) (permitting "[a] record or statement of a public office if . . . it sets out . . . in a civil case . . . , factual findings from a legally authorized investigation; and . . . the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness").

his own self-serving statements. [Doc. 13].

But setting aside Mr. Reynolds' dearth of evidence, the Court need not even determine whether a genuine dispute of fact exists on this issue because the fact is ultimately immaterial. Mr. Reynolds cannot establish that any threat by Wiseman rendered his administrative remedies unavailable. As previously detailed, the BOP grievance procedure explicitly provides a mechanism for filing an administrative remedy request where an inmate fears retribution at the institutional level. 28 C.F.R. § 542.14(d)(1). Indeed, Mr. Reynolds availed himself of that process. [Doc. 16 at 14]. Accordingly, even had Wiseman threatened him, Mr. Reynolds still had other administrative remedies available.

As to those available administrative remedies, however, the evidence conclusively establishes that they were not exhausted prior to the commencement of this case. In the first place, Mr. Reynolds' appears to have filed his sensitive administrative remedy request at the wrong level. [Doc. 16 at 14]. According to 28 C.F.R. § 542.14(d)(1), a sensitive request should first be filed with the appropriate Regional Director and then appealed to General Counsel if needed.[2] But nevertheless, General Counsel received Mr. Reynolds' request on October 23, 2020. *Id.* And prior to receiving a response on November 16, 2020, Mr. Reynolds instituted this action. [Doc. 2 at 17]. Accordingly, in violation of the PLRA, Mr. Reynolds failed to exhaust his administrative remedies before filing this case.

To avoid this conclusion, Mr. Reynolds contends that his sensitive request was effectively denied prior to his filing this action because he did not receive a timely response from the General Counsel. Indeed, Mr. Reynolds is correct that if an "inmate does not receive a response

---

[2] The Court assumes that the Central Office, with which Mr. Reynolds filed his sensitive grievance, and General Counsel are synonymous.

within the time allotted for reply . . . , the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. However, at the General Counsel level, a response must be made within 40 days after the request is received. *Id.* And here, Mr. Reynolds' request was received by the General Counsel on October 23, 2020, meaning a response was not due until December 2, 2020. Consequently, when Mr. Reynolds commenced this action on November 4, 2020, his sensitive request had not been effectively denied. The Court therefore **OVERRULES** Mr. Reynolds' objections related to the exhaustion of administrative remedies.

### B. Rejection Notices

As an initial point, Magistrate Judge Eifert noted that Mr. Reynolds never properly requested injunctive relief regarding any lack of notice of rejected mail. [Doc. 306 at 27]. Nevertheless, even setting aside that potential issue, she determined that Mr. Reynolds had failed to exhaust his administrative remedies with respect to any claim regarding rejection notices. *Id.* at 27-28. Mr. Reynolds objects that once mail was rejected, he and the senders were entitled to notice under the Constitution of the United States. [Doc. 307 at 1-2, 4-5, 6-7, 14, 18]. Moreover, Mr. Reynolds contends that he only became aware of the lack of rejection notices during discovery, *id.* at 12, and that Magistrate Judge Eifert is prohibited from separating such a claim, *id.* at 13. Finally, Mr. Reynolds asserts that had a rejection notice been sent to his mother, she could have resolved her issues with the mail. *Id.* at 15.

Mr. Reynolds is correct that due process requires that an inmate "be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." *Procunier v. Martinez*, 416 U.S. 396, 418-19 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401

(1989); *Martin v. Kelley*, 803 F.2d 236, 243-44 (6th Cir. 1986); *Thomas v. Clear*, No. 7:20-cv-00584, 2021 WL 4267665, at *9 (W.D. Va. Sept. 20, 2021).³ These protections, however, do not excuse an inmate's failure to exhaust his administrative remedies. Accordingly, even had Mr. Reynolds included a claim regarding rejection notices in his sensitive administrative remedies request, that claim would not properly be before this Court because, as previously explained, *see supra* pp. 4-8, he did not exhaust his administrative remedies prior to instituting this action.

Furthermore, although senders are also entitled to rejection notices, Mr. Reynolds lacks standing to raise claims on their behalf. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 (4th Cir. 2020) (noting that with the exception of third-party standing, "[c]ourts have long adhered to the rule that a 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Moreover, Mr. Reynolds' claim that he only became aware of the lack of rejection notices during discovery does not give rise to a genuine issue of material fact. Mr. Reynolds alleges he filed a grievance with FCI Beckley after not receiving a few pieces of incoming mail in October 2020. [Doc. 12 at 5]. He also soon thereafter submitted several rejection notices to the Court. [Doc. 16 at 3-9, 11-13]. Finally, despite Mr. Reynolds' assertions, his claim regarding improper rejection of mail is separate and distinct from his claim concerning lack of notice. The Court therefore **OVERRULES** Mr. Reynolds' objections on this point.

---

³ Mr. Reynolds contends that Magistrate Judge Eifert, in resolving this issue, relied on a case that is no longer good law. *See Torey v. Davis*, No. 7:18cv393, 2021 WL 1186147 (W.D. Va. Mar. 30, 2021). However, a careful review reveals that Magistrate Judge Eifert instead cited to an earlier ruling in the case, which was not subsequently reversed or vacated. *See Torey v. Davis*, No. 7:18cv393, 2020 WL 2840163 (W.D. Va. June 1, 2020).

*C. "Cop Out" Forms*

Mr. Reynolds next objects that, contrary to Magistrate Judge Eifert's findings, he filed numerous grievances between June and October 2020. [Doc. 307 at 2-3, 11]. However, unlike with his sensitive administrative remedy request, Mr. Reynolds asserts that he filed these grievances on "cop out" forms. *Id.* According to Mr. Reynolds, "cop out" forms, of which there is no official record, may be used prior to attempting to informally resolve an issue. *Id.* This explains, Mr. Reynolds argues, why Magistrate Judge Eifert erroneously concluded he had not filed any grievances between June and October 2020. *Id.*

The Court need not resolve whether "cop out" forms are utilized at FCI Beckley. Even assuming Mr. Reynolds filed numerous "cop out" forms, as previously discussed, *see supra* pp. 4-8, the PLRA still required him to exhaust his administrative remedies before filing suit. 42 U.S.C. § 1997e(a). And under Mr. Reynolds' own version of the facts, "cop out" forms are employed prior to the first step in the BOP grievance process – informal resolution. Accordingly, given that Mr. Reynolds did not further pursue these "cop out" filings, he has again failed to exhaust his administrative remedies.

To the extent Mr. Reynolds asserts that his numerous "cop out" filings explain Wiseman's motivation for threatening him, that assertion has no impact on administrative exhaustion. Again, as previously discussed, *see supra* pp. 4-8, even crediting his allegations against Wiseman, Mr. Reynolds still failed to exhaust the administrative remedies that remained available to him. The Court therefore **OVERRULES** his objections regarding "cop out" forms.

*D. Business Activities*

Focusing on a list of activities discussed in his emails, Mr. Reynolds objects that not every item was a prohibited business activity. [Doc. 307 at 8]. Moreover, Mr. Reynolds alleges

that the regulation prohibiting correspondence regarding business activity, 28 C.F.R. § 540.14(d)(4), is unconstitutionally vague and has been improperly applied to him. [Doc. 307 at 19]. He further contends that FCI Beckley staff used the regulation as a pretext for retaliation and racial discrimination. *Id.* at 19-22.

According to BOP regulations concerning inmate mail, the warden at a facility "may reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity." 28 C.F.R. § 540.14(d). Included in this category is correspondence directing business activity, which substantively is a prohibited act under 28 C.F.R. § 541.3, Table 1, 334.[4] *Id.* § 540.14(d)(4). This restriction "does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment." *Id.* For example, "an inmate may correspond about refinancing an existing mortgage or sign insurance papers, but may not operate a mortgage or insurance business while in the institution." *Id.*

As an initial point, contrary to Mr. Reynolds' suggestion, Magistrate Judge Eifert did not find that every activity that Mr. Reynolds discussed in his emails was a prohibited business activity. [Doc. 306 at 13]. Instead, when listing these items, Magistrate Judge Eifert was merely recounting the Defendants' response to Mr. Reynolds' motion for summary judgment. *Id.* at 12-14. Nevertheless, it is noted that not every activity discussed in Mr. Reynolds' emails qualified as a business activity.

As to Mr. Reynolds' vagueness argument, "[t]o survive a vagueness challenge, a

---

[4] Section 540.14(d)(4) incorrectly refers to 28 C.F.R. § 541.13, Prohibited Act No. 408, as the section containing the substantive prohibition against business activity.

11

statute must give a person of ordinary intelligence adequate notice of what conduct is prohibited and must include sufficient standards to prevent arbitrary and discriminatory enforcement." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 160 (1972); *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012)); *see Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health Env't Control*, 317 F.3d 357, 364-67 (4th Cir. 2002) (applying vagueness standard to regulations). "The degree of vagueness tolerated in a law depends in part on the type of statute. Less clarity is required in purely civil statutes because the 'consequences of imprecision are qualitatively less severe.'" *Id.* (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)). "But because we are 'condemned to the use of words, we can never expect mathematical certainty from our language.'" *Greenville Women's Clinic*, 317 F.3d at 366 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

While the exact contours of his argument are unclear, Mr. Reynolds appears to contend that 28 C.F.R. § 540.14(d)(4) lacks "sufficient standards to prevent arbitrary and discriminatory enforcement."[5] *Manning*, 930 F.3d at 272. While the subject regulation provides the warden with broad discretion to reject correspondence, it also provides certain criteria that the warden must follow. Specifically, the warden can only reject correspondence "if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity." 28 C.F.R. § 540.14(d)(4). Moreover, the

---

[5] To the extent Mr. Reynolds instead asserts that the inspection of mail for business activity violates the First Amendment, such an argument is almost certainly without merit. *See, e.g.*, *Wilks v. Rose*, 715 F. App'x 545, 547 (7th Cir. 2018) (upholding against a First Amendment challenge restrictions on an inmate who sought to market a book he had published); *Prison Legal News v. McDonough*, 200 F. App'x 873, 877 (11th Cir. 2006) (upholding against a First Amendment challenge a regulation preventing inmates from receiving compensation from outside business activities).

regulation also lists types of correspondence that may be rejected, including correspondence directing business activity. *Id.* Although such standards are less stringent than those provided in criminal statutes, "[t]he degree of vagueness tolerated in a law depends in part on the type of statute" being considered. *Manning*, 930 F.3d at 272. And this case concerns a BOP regulation where the "consequences of imprecision are qualitatively less severe." *Id.* (quoting *Vill. of Hoffman Estates*, 455 U.S. at 499). Indeed, under 28 C.F.R. § 540.14(d)(4), the warden only retains the power to reject correspondence. Accordingly, whether on its face or as applied to Mr. Reynolds, the regulation contains "sufficient standards to prevent arbitrary and discriminatory enforcement." *Manning*, 930 F.3d at 272.

Mr. Reynolds' assertion that 28 C.F.R. § 540.14(d)(4) has been applied inconsistently to his own conduct does nothing to change this conclusion. To begin, even had the mailroom supervisor given Mr. Reynolds permission to publish manuscripts, as he alleges [Doc. 307 at 19], that would not have permitted him to operate a publishing business in violation of BOP regulations. Moreover, Mr. Reynolds' allegations surrounding an incident report that purportedly exonerated him have already been addressed and found to be unsupported. [Doc. 313 at 3-4]. But even crediting those allegations, the purported incident report concerned unauthorized business activity, which is a prohibited act under 28 C.F.R. § 541.3, Table 1, 334, notably a different regulation than the one at issue here. [Doc. 313 at 1-2]. Finally, at the May 13, 2021, hearing, Magistrate Judge Eifert was not "confused as to how Reynolds could be violating the 'written words' of 28 C.F.R. § 540.14(d)(4)." [Doc. 307 at 20]. On the contrary, she instead noted that, at an earlier time in the case, the Defendants had not yet submitted sufficient evidence for her to reach a conclusion. [Doc. 78 at 13-14].

Having determined that the regulation in question is not unconstitutionally vague,

the Court now turns to Mr. Reynolds' argument that the regulation was improperly applied. Faced with a substantial amount of evidence that he was operating a business [Doc. 246-3], Mr. Reynolds argues that his actions were permissible under the narrow exception to 28 C.F.R. § 540.14(d)(4), which permits "correspondence necessary to enable an inmate to protect property and funds that were legitimately the inmate's at the time of commitment." However, while Mr. Reynolds strongly persists in this argument, the evidence does not support it. Magistrate Judge Eifert found that Mr. Reynolds has published books during the pendency of this case. [Doc. 306 at 46]. Moreover, despite commencing incarceration in 2007, Mr. Reynolds' first publication did not occur until 2011. *Id.* The Defendants have also attached copious emails and screenshots concerning the business. [Doc. 246-3]. Mr. Reynolds' only response is to suggest that he may have had the manuscripts prior to incarceration. But such an assertion strains credulity. Mr. Reynolds was operating a publishing business, not maintaining property or merely publishing manuscripts.

As a final point, no evidence exists that Mr. Reynolds' business activities were restricted in order to retaliate against him either because of his race or because he had filed his initial grievance. As just discussed, Mr. Reynolds was indeed operating a publishing business. FCI Beckley thus properly rejected mail concerning the operation of that business. Such a policy is provided in BOP regulations and applies to all inmates regardless of race or any grievances they may have filed. Accordingly, based on the evidence of record, the Court **OVERRULES** Mr. Reynolds' objections concerning his business activities.

*E. Return of Mail*

Mr. Reynolds' next objection relates to the return of rejected mail. First, he requests the return of two pieces of mail from his mother that were incorrectly flagged as inmate-to-inmate correspondence. [Doc. 307 at 14]. This request is also the subject of a recently filed motion by Mr.

14

Reynolds, which the Court construes as a supplement to his objections. [Doc. 308]. Next, Mr. Reynolds seeks the return of advertisements, greeting cards, and photographs, which due to a policy change are no longer prohibited at FCI Beckley. [Doc. 307 at 17-18].

Additionally, Magistrate Judge Eifert concluded -- and FCI Beckley admits -- two pieces of mail from Mr. Reynolds' mother were improperly rejected [Doc. 306 at 34, 292-1 at 2-3]. The matter is thus not in controversy. Mr. Reynolds' objection on that point is thus moot, and FCI Beckley will restore the improperly rejected mail (Reference Nos. 1,760,899 and 1,762,761) to Mr. Reynolds within ten (10) days of the date of the Judgment. Mr. Reynolds' also seeks to have the Defendants make accommodations for him to mail a rejected book, which is still in the Defendants' possession. [Doc. 308]. Magistrate Judge Eifert concluded, however, that the book was properly rejected. [Doc. 306 at 44-45]. The Court discerns no error in that conclusion. That portion of the objection is **OVERRULED**.

Finally, the Court has previously addressed whether policy changes made during the pendency of this case apply retroactively. [Doc. 314 at 4, 6]. Because it concluded that they did not and because Mr. Reynolds has provided no reason for the Court to reconsider those previous decisions, the Court **OVERRULES** his objection on this point.

### F. Miscellaneous Factual Issues

Mr. Reynolds also objects to several miscellaneous rulings or observations by the magistrate judge. First, he asserts that, contrary to Magistrate Judge Eifert's recitation of the facts, the Defendants eventually permitted him to mail the manuscript that had previously been rejected on November 3, 2020. [Doc. 307 at 3-4]. Upon review of the record, it does appear that Mr. Reynolds informed the Court of this fact at the May 13, 2021, status conference. [Doc. 78 at 10, 26]. The Court therefore **SUSTAINS** Mr. Reynolds' objection.

Next, Mr. Reynolds objects that he never sought monetary damages. [Doc. 307 at 4]. But in his amended complaint, he requested "[a] trial to determine the amount of damages due for the violations of his rights." [Doc. 12 at 9]. While he later rescinded that request [Doc. 78 at 26], Magistrate Judge Eifert correctly recorded that Mr. Reynolds sought such relief in his amended complaint [Doc. 306 at 4]. Accordingly, the Court **OVERRULES** Mr. Reynolds' objection.

Mr. Reynolds further contends that FCI Beckley failed to notify inmates and the public that a third-party contractor was being used to manage general inmate correspondence. [Doc. 307 at 5]. Mr. Reynolds cites no authority for such a notice requirement, and the Court is aware of none. To the extent Mr. Reynolds intends to argue that rejection notices were not provided to inmates, that argument has already been addressed. *See supra* pp. 8-10. The Court therefore **OVERRULES** this objection.

Mr. Reynolds additionally disputes that he ever agreed he was prohibited from publishing under a byline and cites *Jordan v. Pugh*, 504 F. Supp. 2d 1109 (D. Colo. 2007), in support of his right to do so. [Doc. 307 at 5]. But in referring to this statement purportedly made by Mr. Reynolds, Magistrate Judge Eifert was simply summarizing the information contained in an Office of Internal Affairs Investigative Report. [Doc. 306 at 7-8]. Indeed, that report states, "Reynolds stated he knew he could not publish under a byline or conduct a business or profession while in Bureau custody." [Doc. 246-2 at 3]. And notably, Mr. Reynolds' mail was rejected because he was operating a publishing business, not because he was publishing under a byline. Accordingly, inasmuch as Magistrate Judge Eifert accurately recounted the information in the report and inasmuch as Mr. Reynolds' point is immaterial, the Court **OVERRULES** the objection. Mr. Reynolds' disagreement with the report however is noted.

Mr. Reynolds next objects that, contrary to Magistrate Judge Eifert's findings, SIS Technicians Sweeny and Manning both stated that they did not investigate him. [Doc. 307 at 5-6]. Again, however, Mr. Reynolds misunderstands Magistrate Judge Eifert's PF&R. At that point, Magistrate Judge Eifert was only reiterating the arguments laid out in the Defendants' response to Mr. Reynolds' motion for summary judgment. [Doc. 306 at 9-10]. She was not making a factual finding. *Id.* But even if she were, despite Mr. Reynolds' insistence, no genuine dispute of material fact exists. Michael Austin, an SIS Lieutenant at FCI Beckley, submitted a declaration, which stated that mailroom staff initially consulted with SIS Technicians Sweeny and Manning regarding their determination that Mr. Reynolds was conducting business activity. [Doc. 246-1 at 4]. Without again mentioning Sweeny and Manning, Austin then states that SIS staff investigated the situation. *Id.* The denials by Sweeny and Manning [Doc. 255 at 13-17] therefore are consistent with Austin's declaration. For these reasons, the Court **OVERRULES** Mr. Reynolds' objection.

Mr. Reynolds moreover asserts that, despite Wiseman's denials, as an employee in the mailroom, he must have reviewed his sensitive grievance since it would have come through the mail. [Doc. 307 at 6]. Yet again, Mr. Reynolds misconstrues the PF&R. Magistrate Judge Eifert was not making a factual finding but was instead relating the contents of Wiseman's declaration. [Doc. 306 at 8]. Moreover, Mr. Reynolds also misconstrues the declaration. Wiseman stated that Correction Systems Officers, such as himself, "do not provide forms, accept or review inmate administrative remedies, or oversee the administrative remedy program at FCI Beckley." [Doc. 246-3 at 3]. The thrust of that statement is that Wiseman had nothing to do with Mr. Reynolds' sensitive grievance, not that he never laid eyes upon the document. The Court therefore **OVERRULES** Mr. Reynolds' objection on this point.

Mr. Reynolds also objects to Magistrate Judge Eifert's speculation that six letters

17

sent by his mother contained correspondence from other inmates as opposed to "family and friends who do not want to be associated with FCI Beckley's third party mail forwarder." [Doc. 307 at 14]. But Magistrate Judge Eifert did not speculate. She reviewed the rejected mail sent by Mr. Reynolds' mother and then made her determination.[6] [Doc. 235 at 3-4]. Accordingly, the Court **OVERRULES** his objection.

Finally, Mr. Reynolds contends that FCI Beckley staff intentionally rejected mail from his mother despite knowing she was not an inmate. [Doc. 307 at 15-17]. Mr. Reynolds, however, has no evidence for this claim. On the other hand, the Defendants have produced a declaration from George Yurkovich, a Supervisory Correctional Systems Specialist at FCI Beckley, who explained that, for a time, mailroom staff had mistakenly believed Mr. Reynolds' mother was an inmate due to her frequent violations of BOP policy. [Doc. 292-1 at 2-3]. These violations included conducting business activity and forwarding letters from other inmates. *Id.* Eventually, however, FCI Beckley realized and corrected their mistake. *Id.* Accordingly, Mr. Reynolds has failed to raise a genuine issue of material fact on the point, and the Court **OVERRULES** Mr. Reynolds' objection.

## IV.

For the foregoing reasons, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Mr. Reynolds' objections. [**Doc. 307**]. However, because none of those rulings impact the Magistrate Judge's conclusions, the Court **ADOPTS** the Magistrate Judge's PF&R [**Doc. 306**], **GRANTS** Defendants' motion for summary judgment [**Doc. 246**], **DENIES** Mr. Reynolds'

---

[6] Pieces of mail were rejected for multiple reasons. [Docs. 235, 292]. Accordingly, the exact number rejected under each category is open to interpretation. However, because that is not the subject of Mr. Reynolds' objection, the Court declines to address this issue further.

motion for summary judgment [**Doc. 261**], **DISMISSES** Mr. Reynolds' amended complaint [**Doc. 12**], and **REMOVES** this case from the active docket.

The Court **DIRECTS** the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:     March 30, 2023

Frank W. Volk
United States District Judge